467 Mass. 587 (2014)                                                587

Town of Hanover v. New England Regional Council of Carpenters.

## Town of Hanover *vs.* New England Regional Council of Carpenters.

Plymouth. December 2, 2013. - March 25, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Abuse of Process. Labor. Practice, Civil,* Motion to dismiss, Standing.

In a civil action alleging abuse of process, brought by a town against the defendant, an association that had provided support to ten taxpayers of the town who had sued the town to prevent it from paying a contractor who had committed fraud in the prequalification stage of the bidding process for a public works contract, the judge erred in denying the defendant's special motion to dismiss pursuant to G. L. c. 231, § 59H, where the support of litigation, even without being named a party in that litigation, constituted protected petitioning activity within the meaning of the statute [590-595]; and where the town did not demonstrate that the defendant's right to petition was devoid of any reasonable factual support or any arguable basis in law [595-597].

Civil action commenced in the Superior Court Department on October 6, 2011.

A special motion to dismiss was heard by *Robert C. Cosgrove,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Christopher N. Souris* for the defendant.

*James A. Toomey* for the plaintiff.

*Richard J. Yurko, Noemi A. Kawamoto, Sarah R. Wunsch, Audrey R. Richardson, & Susan Reid,* for American Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

Ireland, C.J. This case presents an issue of first impression: whether an association that has provided support for litigation, without being a named party in that litigation, has engaged in protected petitioning activities for the purposes of G. L. c. 231,

§ 59H. The defendant, the New England Regional Council of Carpenters, appeals from a Superior Court judge's denial of its special motion to dismiss a suit by the town of Hanover (town) claiming that the defendant engaged in abuse of process in prior legal proceedings.[1] Because we conclude that support of litigation constitutes protected petitioning activity within the meaning of G. L. c. 231, § 59H, and that, here, the town did not demonstrate that the defendant's right to petition was "devoid of any reasonable factual support or any arguable basis in law," *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 123 (2002), we allow the defendant's special motion to dismiss.

1. *Prior litigation.* We begin by briefly discussing certain events relevant to the defendant's special motion to dismiss. In May, 2009, the town engaged in an open bidding process for the construction of the town's new high school. *Fordyce* v. *Hanover*, 457 Mass. 248, 251-252 (2010) (*Fordyce*). The town awarded the contract to the contractor with the lowest formal bid, following which a subcontractor who was not involved in the winning contract filed a bid protest with the Attorney General. *Id.* at 252. After an investigation of the town's bidding process and award of the contract, the Attorney General found that the contractor who had won the bid had engaged in fraud pursuant to G. L. c. 149, § 44D½ (*h*), during the prequalification stages of the bidding process. *Id.*

Nevertheless, the town continued to honor its contract with the winning contractor, and ten taxpayers of the town initiated an action against the town pursuant to G. L. c. 40, § 53 (the 2009 litigation).[2] *Id.* at 254. The taxpayers sought, among other

---

[1]We acknowledge the amicus brief filed by the American Civil Liberties Union of Massachusetts, the Conservation Law Foundation, Gay & Lesbian Advocates & Defenders, and the Massachusetts Fair Wage Campaign.

[2]General Laws c. 40, § 53, states, in relevant part, "If a town [or] regional school district . . . [is] about to raise or expend money or incur obligations purporting to bind said town [or] regional school district . . . for any purpose or object or in any manner other than that for and in which such town [or] regional school district . . . has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon petition of not less than ten taxable inhabitants of the town, . . . determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power."

"The purpose of competitive bidding statutes is [to] 'ensure that the awarding

things, a temporary and permanent injunction to prevent the town from paying the contractor who had committed fraud and "to require the town to rescind the contract." *Id.* A Superior Court judge allowed the taxpayers' motion for a preliminary injunction, relying in part on the Attorney General's decision. *Id.* As a result, construction was halted for approximately one month. Appeals ensued.[3] After our decision in *Fordyce, id.* at 266, which effectively permitted the town to adhere to the contract with the lowest bidder, the parties stipulated to a dismissal of the case with prejudice.

2. *Current litigation.* In October, 2011, the town filed a complaint against the defendant alleging abuse of process during the 2009 litigation. The town claimed, in essence, that the defendant supported the taxpayers in the 2009 litigation by commencing and maintaining the litigation, providing legal counsel, and controlling the taxpayers' interests.[4] In response, the defendant filed the special motion to dismiss at issue here, pursuant to G. L. c. 231, § 59H ("anti-SLAPP" statute). In its motion, the defendant asserted that the town's claims against it are solely based on the organization's constitutionally protected right to petition.

After a hearing, a Superior Court judge denied the defendant's motion, stating that, because it was not a named party in the 2009 litigation and had not established that it engaged in

authority obtain the lowest price among responsible contractors' and 'to establish an open and honest procedure for competition for public contracts.' " *Callahan & Sons* v. *Malden*, 430 Mass. 124, 128 (1999), quoting *Modern Cont. Constr. Co.* v. *Lowell*, 391 Mass. 829, 840 (1984).

[3]On appeal, a single justice of the Appeals Court vacated the order of the preliminary injunction. See *Fordyce* v. *Hanover*, 457 Mass. 248, 249 (2010). We affirmed the single justice's order vacating the allowance of the plaintiff's motion for a preliminary injunction. *Id.* at 267. We concluded that the winning contractor's bid should not be disqualified for fraud pursuant to G. L. c. 149, § 44D½ (*h*), because "there is unrefuted evidence that the [prequalification] committee did not act in reliance on any of the [winning contractor's] alleged misrepresentations." *Fordyce* v. *Hanover, supra* at 266. Excepting the town's current request for an award for damages of costs incurred by construction delays during the injunction and by the costs of appeals, the appellate history of the 2009 litigation does not pertain to the issue before us.

[4]As a factual matter, the defendant has not admitted any involvement in the 2009 litigation. Therefore, we have only the town's allegations of the defendant's actions. For simplicity of discussion, we accept the allegations as true.

petitioning activities, the defendant did not have standing to bring a special motion to dismiss under the anti-SLAPP statute. The defendant contends that associations that support litigants in seeking redress against the government, like the litigants themselves, are engaging in constitutionally protected petitioning activity.

3. *Discussion.* The town argues that the judge correctly denied the special motion to dismiss because the act of supporting individuals for the purpose of filing litigation against the town does not qualify as protected petitioning activity under the anti-SLAPP statute. Relying on *Kobrin* v. *Gastfriend,* 443 Mass. 327, 333 (2005), the town contends that if a party is not directly aggrieved by the government, and has not sought redress on his own behalf, a special motion to dismiss pursuant to G. L. c. 231, § 59H, is unavailable.[5] The town also contends that the alleged involvement in the 2009 lawsuit was unlawful because some of the named plaintiffs were substituted for other plaintiffs in amended complaints and, at one point during the litigation, there were fewer than ten taxpayers to bring the suit.[6] Additionally, the town states that the appeals and the preliminary injunction that halted construction caused damages in the form of attorney's fees.

a. *G. L. c. 231, § 59H.*[7] Constitutional petitioning activity for the purposes of the anti-SLAPP statute is not limited to being a

---

[5]Underlying the town's argument that the defendant was not engaging in petitioning activity when it supported the taxpayers in the 2009 litigation is the town's assertion that the term "petitioning" under the anti-SLAPP statute is synonymous with the term "petitioning" pursuant to G. L. c. 40, § 53, the statute under which the ten taxpayers sued the town. This is an inaccurate reading of the anti-SLAPP statute.

[6]The town also asserts that the defendant had an unlawful intent when it involved itself in the 2009 litigation because it wished to "influence directing Project work to union labor and/or to require the re-bidding of the project contract so that a general contractor using union labor would be selected." However, these allegations do not affect our analysis because "the motive behind the petitioning activity is irrelevant at this initial stage." *Office One, Inc.* v. *Lopez,* 437 Mass. 113, 122 (2002).

[7]General Laws c. 231, § 59H, states, in relevant part,

"In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion

named party in litigation, but rather includes activities such as "writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, . . . filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstration." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 161-162 (1998), quoting Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 5 (1989). The right to petition the government also includes "reporting violations of law." *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 161, quoting Pring, *supra*. See *Fabre* v. *Walton*, 436 Mass. 517, 523 (2002), *S.C.*, 441 Mass. 9 (2004) (filing complaint and supporting affidavits for abuse protection order constitutes petitioning activity pursuant to G. L. c. 231, § 59H). "[T]here is no statutory requirement that petitioning parties directly commence or initiate proceedings . . . [but] the statute requires that the protected party have more than a mere contractual connection" to petitioning activity. *Kobrin* v. *Gastfriend*, 443 Mass. at 338.

General Laws c. 231, § 59H, protects several types of "statements" that constitute protected petitioning activity regardless of whether the parties provide support for, or are named parties,

to dismiss. . . . The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. . . .

". . .

"[T]he words 'a party's exercise of its right of petition' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government."

in judicial proceedings. See *Cadle Co.* v. *Schlichtmann*, 448 Mass. 242, 248 (2007) (five types of statements are protected pursuant to G. L. c. 231, § 59H). A party's exercise of its right to petition includes "any written or oral statement made in connection with an issue under consideration or review by a . . . judicial body . . . ." G. L. c. 231, § 59H. Likewise, "any statement reasonably likely to encourage consideration or review of an issue by a . . . judicial body" or "reasonably likely to enlist public participation in an effort to effect such consideration" is also protected. *Id.* We have held that parties other than named parties who are sued for their involvement with petitioning activity in an underlying lawsuit have engaged in actions protected by the statute and, therefore, may utilize the statute's protections. See *McLarnon* v. *Jokisch*, 431 Mass. 343, 349 (2000) (parents involved with reporting crime against son, and who were sued based on that involvement, had engaged in constitutionally protected petitioning activity). Anti-SLAPP protections are also available to attorneys who represent individuals engaging in petitioning activity against the government. *Plante* v. *Wylie*, 63 Mass. App. Ct. 151, 156-157 (2005).

Here, the ten taxpayers in the 2009 litigation petitioned against the town for redress of what was deemed to be, before our decision in *Fordyce*, an illegality in the prebidding process. In other words, the taxpayers brought suit against the town to commence judicial review of what they deemed to be the town's expenditure of money binding the town's taxpayers "in any manner other than that for and in which [the] town . . . has the legal and constitutional right and power to raise or expend money." G. L. c. 40, § 53. See *Fordyce*, 457 Mass. at 254. The defendant's organizational support of the taxpayers who brought suit constitutes the practice of reporting a violation of law, particularly in light of the statute's definitions of protected petitioning activity. See *Baker* v. *Parsons*, 434 Mass. 543, 549-550 (2001) (defendant's statements made in response to State and Federal officials were protected by anti-SLAPP statute).

The defendant's role in the commencement and maintenance of the action against the town, as well as its actions of providing legal counsel and advice to the taxpayers, falls within the statute's scope of protected activities. The defendant, like the taxpayers themselves, was enlisting the taxpayers in order to effect

judicial review of an expenditure of town funds that had been misused. Its involvement in the litigation was likely to encourage consideration by the courts and enlist the participation of the public, here, the taxpayers, to effect that consideration. The defendant's support thus falls within the statute's definition of a "statement."[8] Cf. *Marabello* v. *Boston Bark Corp.*, 463 Mass. 394, 400 (2012) (special motion to dismiss not applicable where claim not based on "any statement made . . . in the exercise of [the defendant's] right of petition"). Such support of litigation brought to seek redress against the government constitutes petitioning activity for purposes of the anti-SLAPP statute.

The town's reliance on *Kobrin* v. *Gastfriend*, 443 Mass. at 332, is misplaced. There, we concluded that the defendant, an expert witness hired by a governmental agency in connection with a disciplinary proceeding, could not avail himself of the anti-SLAPP statute because he "was not seeking from the government any form of redress for a grievance of his own or otherwise petitioning on his own behalf." *Id.* at 330. The defendant's support of the taxpayers also is not, as the town contends, similar to the actions of a newspaper reporter whose articles "did not contain statements seeking to redress a grievance or to petition for relief" and were thus not protected by the anti-SLAPP statute. *Fustolo* v. *Hollander*, 455 Mass. 861, 867 (2010).

Contrary to the town's argument, making statements to seek redress is not always an individual activity, and the phrase "on their own behalf" in the case law does not indicate that only named parties in a lawsuit have standing to bring an anti-SLAPP special motion to dismiss. See *McLarnon* v. *Jokisch*, 431 Mass. at 347; *Plante* v. *Wylie*, 63 Mass. App. Ct. at 156-157. The constitutional "[f]reedom of association guarantees an opportunity for people to express their ideas and beliefs through membership or affiliation with a group." *Caswell* v. *Licensing Comm'n.*

---

[8]Although here we discuss two types of statements that correspond with the defendant's actions, the defendant's involvement in the 2009 litigation is encompassed by other "statements" as defined by the statute. For example, providing litigation support in this case was a statement "made in connection with an issue" being reviewed by the courts, and was "reasonably likely to encourage consideration or review" by the court in response to the Attorney General's investigation. G. L. c. 231, § 59H. See *Baker* v. *Parsons*, 434 Mass. 543, 549 (2001).

*for Brockton*, 387 Mass. 864, 871-872 (1983). Associations such as unions are comprised of individuals who "have a right to organize into parties . . . for the purpose of advancing causes in which they believe." *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 252 (1946). Thus, as well as having petitioning rights of its own, the defendant shared the taxpayers' interests to seek a preliminary injunction against the town, as presumably, the defendant's involvement in the 2009 litigation was to obtain the organization's objective on behalf of its members.

The "apparent purpose of the anti-SLAPP statute [is] to dispose expeditiously of meritless lawsuits that may chill petitioning activity." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 166. Punishing organizations that support constitutionally protected petitioning activity would only serve to inhibit both individual and organizational rights of petitioning. See *Plante* v. *Wylie*, 63 Mass. App. Ct. at 157 ("Suits directed against the attorneys who represent petitioning parties are just as likely to exert a chilling effect on petitioning activity as suits directed against the parties themselves"). Doing so would also eliminate rights to petition granted by the statute to those who enlist public participation to effect consideration or review of an issue by a court of law, and would ultimately diminish discussion of legal issues in the courts.

Our conclusion is in accord with the reasons underlying the statute's enactment. The Legislature in 1994 enacted the anti-SLAPP statute, G. L. c. 231, § 59H, to counteract suits filed to "intimidate opponents' exercise of rights of petitioning and speech." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 161. The statute was intended to protect the right to petition the government for "the redress of grievances" guaranteed by the United States Constitution.[9] *Id.* See *Kobrin* v. *Gastfriend*, 443 Mass. at 334 & n.9; *Baker* v. *Parsons*, 434 Mass. at 549, quoting *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 162 ("[T]he Legislature intended to go beyond the 'typical' case by enacting 'very broad protection for petitioning activities' ").

---

[9]"[T]he right of access to the courts is an aspect of the First Amendment [to the United States Constitution] to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc.* v. *National Labor Relations Bd.*, 461 U.S. 731, 741 (1983).

Further, the origins of the statute lie in the Legislature's attempt to protect those who, "when exercising their constitutional right to speak out against development projects or other matters of concern to them and their communities," would be stifled by lawsuits against them. *Kobrin* v. *Gastfriend*, 443 Mass. at 337. Finally, "the Legislature recognized that 'full participation by persons *and organizations* and robust discussion of issues before legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process' " (emphasis added). *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 161, quoting preamble to 1994 House Doc. No. 1520.

b. *Two-part inquiry pursuant to G. L. c. 231, § 59H.* Having concluded that the statute applies to the defendant's actions, we turn to the well-established burden-shifting test established in the *Duracraft* decision. See 427 Mass. at 167-168. We review to determine whether, when the judge denied the special motion to dismiss, there was an abuse of discretion or an error of law. *McLarnon* v. *Jokisch*, 431 Mass. at 348.

First, the special movant must make a "threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 167-168. "[I]f the *only* conduct complained of is petitioning activity, then there can be no other 'substantial basis' for the claim" (emphasis in original). *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 122 (2002). The defendant has made the requisite showing.

The town's claim against the defendant is primarily that it was involved in the 2009 litigation against the town, despite not being a named plaintiff in the suit.[10] According to the town, the defendant abused process by supporting the ten taxpayers who brought the suit and by enlisting too few taxpayers required for the litigation, in addition to naming taxpayers in the suit who did not know they were parties. Underlying both of these allegations is the assertion that the defendant was using the courts to redress a wrong by the government.

---

[10]The first element of the tort of abuse of process is using process. *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 456 Mass. 627, 636 (2010).

The record presents nothing to suggest that there is any sub-
stantial basis for the town's claims other than the protected
petitioning activity; the act of engaging in litigation, albeit
behind the scenes, provides the only basis for the town's
complaint. The town's request for costs caused by litigating the
appeals further supports our conclusion that there was no basis
for the town's claim against the defendant other than the defend-
ant's constitutionally protected activity.

Because the defendant has shown that the suit against it was
based on protected petitioning activity, the burden of proof
shifts to the town as the nonmoving party. See *id.* at 123. The
town must show by a preponderance of evidence that the defend-
ant's "exercise of its right to petition was devoid of any reason-
able factual support or any arguable basis in law and . . . [its]
acts caused actual injury" to the town.[11] G. L. c. 231, § 59H. It
has not done so.

There is ample factual support for the premise that the 2009
litigation, as commenced, maintained, and controlled by the
defendant, was initiated to redress grievances against the town.
As detailed in the Attorney General's findings, the contractor
who had been awarded the bid had committed fraud during the
prebidding process. See *Fordyce*, 457 Mass. at 252-253. A
Superior Court judge, a single justice of the Appeals Court, and
this court provided factual findings concerning the bidding
process of the project in dispute. See *id.* Further, the town has
not shown by a preponderance of the evidence that the 2009
litigation was deficient in the number of taxpayers bringing the
suit. The record shows that the complaint was amended three
times in order to substitute and add taxpayers, but nowhere
shows a defective complaint, which could be disposed of by
other procedural methods.[12] Because of our conclusions regard-
ing support of litigants seeking redress from the government,

---

[11]The town asserts it need not provide support for its claim of abuse of
process, beyond the claims alleged in the pleadings, because the allegations of
a complaint are to be accepted as true for purposes of a motion to dismiss,
and accordingly, the defendant had the burden to show that the ten taxpayers
had voluntarily enlisted in the 2009 litigation. However, we decline to equate
a special motion to dismiss pursuant to G. L. c. 231, § 59H, with a motion to
dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

[12]Although the record before us does not include the defendant's first mo-

and because the town did not meet its burden under the anti-SLAPP statute, the defendant's special motion to dismiss should be allowed.[13]

4. *Conclusion.* We remand the case for entry of an order granting the defendant's special motion to dismiss and for the award of its costs and reasonable attorney's fees as required by G. L. c. 231, § 59H. See *Office One, Inc.* v. *Lopez*, 437 Mass. at 126.

*So ordered.*

---

tion to amend the complaint, there is nothing on record to support the town's allegations that there were too few taxpayers during the 2009 litigation. The Superior Court judge approved the defendant's motion to file an assented-to second amended complaint that substituted one plaintiff for another, its motion to file a third amended complaint that substituted two plaintiffs for one plaintiff, and the motion to file a fourth amended complaint that added one plaintiff.

[13]Because of our conclusion, we do not reach the secondary inquiry, whether the defendant's acts caused injury to the town. See G. L. c. 231, § 59H.