NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-355

CAROLE A. HINKLEY

vs.

MICHAEL W. GUNTOR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother, Carole A. Hinkley, appeals from a judgment of the Probate and Family Court dismissing her complaint in equity against the father, Michael W. Guntor.  The mother contends that the judge erred by analyzing her claim of fraud under Mass. R. Dom. Rel. P. 60(b), instead of G. L. c. 215, § 6; abused his discretion in denying her relief under rule 60(b); and abused his discretion in ordering her to pay the father's attorney's fees and costs.  We affirm.

Background.  A judgment of divorce nisi entered relating to the parties in 2007.  Between 2009 and 2019, the judgment was modified several times as to the father's child support obligation.  In 2018, the father filed a complaint for

modification in which he sought to reduce his child support obligation in anticipation of his retirement from the military and the resulting loss of his civilian employment. The father filed three financial statements in support of his complaint for modification, and neither party conducted discovery. Following a hearing, the first judge issued a temporary order in November 2018 that reduced the father's child support obligation to $25 per week and required him to document any unemployment benefits he may receive. After another hearing in February 2019, the judge found that the father had begun receiving unemployment benefits and increased his child support obligation to $199 per week. The judge also found that, because the father failed to provide notice of his unemployment benefits, the increased amount applied retroactively. Ultimately, the parties entered into an agreement for judgment on April 12, 2019, that set the father's child support obligation at $202 per week.

On January 19, 2021, the mother filed an affidavit stating that she discovered the father was "receiving monthly disability payments in the amount of $3,263.74 which he has never reported as income." Following a hearing, a second judge issued a temporary order requiring that a retroactive arrearage of the father's child support obligation "be calculated from July 2, 2019," the date of notice of the father's complaint for

2

modification.  The order further stated that "if [the mother] wishes to seek retroactive support prior to July 2, 2019, that must be pled by special proceedings outside of the present action."

On April 15, 2021, the mother filed a complaint in equity "pursuant to Mass. R. Dom. Rel. P. 9(b)" for relief from the April 12, 2019, agreement for judgment, alleging that it was a result of fraudulent statements and documents provided by the father.  In 2024, a trial on the complaint was held before the first judge, and both parties were represented by counsel. Before the trial began, the judge explained that because the mother had filed her complaint more than a year after the judgment on modification entered, she was required under Mass. R. Dom. Rel. P. 60(b) to prove "fraud upon the court," which entails "more than just the elements of common law fraud." Following trial, the judge entered judgment for the father and issued a memorandum explaining his decision.  In short, the judge determined that, even though the father's "financial statements submitted in the modification action certainly did not set a high-water mark for accuracy," he did not find that the father's misconduct was "deliberate and calculated to mislead and defraud the [mother] or the court."  After another hearing, the judge ordered the mother to pay the father

3

$16,051.66 in attorney's fees and costs expended in defending against the mother's equity action. The judge based his decision, inter alia, "on the Mother's complete failure to demonstrate the heightened legal standard necessary" to sustain her claim. The mother appeals from both judgments.

Discussion. 1. Claim in equity. The mother contends that the judge erred by analyzing her claim of fraud under Mass. R. Dom. Rel. P. 60(b), instead of G. L. c. 215, § 6, which establishes the Probate and Family Court's equity jurisdiction. However, the mother did not assert G. L. c. 215, § 6, as a basis for relief in her complaint, but rather sought relief "pursuant to Mass. R. Dom. Rel. P. 9(b)." Rule 9(b) establishes a heightened pleading standard for allegations of fraud and deceit, but does not authorize or create an action in equity for relief from a judgment on that basis. See Equipment & Sys. For Indus., Inc. v. Northmeadows Constr. Co., 59 Mass. App. Ct. 931, 931-932 (2003). In these circumstances, it was reasonable for the judge to treat the mother's complaint as a motion under rule 60(b). See Sahin v. Sahin, 435 Mass. 396, 399-400 (2001) ("Rule 60 sets forth a comprehensive framework for obtaining relief from a final judgment or order"). Although the mother now contends that the Probate and Family Court may use its general equitable powers to "close gaps in child support," she did not

4

advance that theory in the Probate and Family Court. Accordingly, her argument is waived. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

2. Relief under rule 60(b). In the alternative, the mother argues that the judge erred in concluding that she was not entitled to relief under rule 60(b). "[W]e review the judge's ruling for abuse of discretion," as "[a] motion for relief under rule 60(b) is directed to the sound discretion of the motion judge." Dilanian v. Dilanian, 94 Mass. App. Ct. 505, 515 (2018), quoting Ulin v. Polansky, 83 Mass. App. Ct. 303, 308 (2013). "[A] judge's discretionary decision constitutes an abuse of discretion where [the reviewing court] conclude[s] the judge made a clear error of judgment in weighing the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives" (quotation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

In pertinent part, Mass. R. Dom. Rel. P. 60(b) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." A motion pursuant to rule 60(b)(3) "must be made within one year following the entry of judgment. This one-year time limit cannot be extended."

5

*Chavoor* v. *Lewis*, 383 Mass. 801, 803 (1981).  Because the mother filed her complaint on April 15, 2021, more than one year after the judgment on modification entered on April 12, 2019, relief under rule 60(b)(3) was unavailable to her.  Furthermore, because her claim for "relief from fraud," which was based on her alleged reliance on the father's "fraudulent misrepresentation of his income," plainly falls within the scope of rule 60(b)(3), the catchall provision of rule 60(b)(6), which provides for relief "for any other reason justifying relief from the operation of the judgment," does not apply.  *Paternity of Cheryl*, 434 Mass. 23, 34-35 (2001) (party seeking relief from judgment may not utilize rule 60[b][6] where "arguments are not requests for relief independent of subsections [1]-[5]").

It is true that rule 60(b) "contains one more possible escape valve as to the timing of the challenge to a judgment." *Guardianship of Ingrid*, 102 Mass. App. Ct. 1, 6 (2022).  A party may pursue an "an independent action [for relief] from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."  Mass. R. Dom. Rel. P. 60(b). In *Paternity of Cheryl*, 434 Mass. at 35, the Supreme Judicial Court stated that

> "[a] 'fraud on the court' occurs where 'it can be
> demonstrated, clearly and convincingly, that a party has
> sentiently set in motion some unconscionable scheme
> calculated to interfere with the judicial system's ability

6

impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense'" (citation omitted).

Allegations of fraud or failure to disclose are not sufficient, "particularly where the moving party was aware of facts, or in a position to discover the true facts, before or shortly after the judgment entered." Guardianship of Ingrid, supra at 10. "The question . . . is not whether the [party] committed misconduct, even misconduct amounting to fraud, but rather whether their misconduct led to a judgment that was 'manifestly unconscionable' or a 'grave miscarriage of justice.'" Id. at 12, quoting Sahin, 435 Mass. at 402.

Here, the judge acted well within his discretion in concluding that the mother did not "satisfy[] this high burden." After hearing the parties' testimony, the judge concluded that the evidence was insufficient to prove that the father's misconduct was deliberate or "calculated to mislead and defraud the plaintiff or the court." Furthermore, even if the father had "deliberately underreported his income, under oath, to mislead and defraud the [mother] into accepting less child support," the judge concluded that such actions would have amounted to "perjury and common law fraud -- but no more than that." In addition, the mother could have discovered the discrepancies in the father's reporting through reasonable

7

discovery, but "did not take advantage of that opportunity."
The possibility that a party may perjure himself is a "common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination" (citation omitted). Sahin, 435 Mass. at 402. Finally, the judge found that the father's misconduct had not resulted in a judgment that was "manifestly unconscionable." See Guardianship of Ingrid, 102 Mass. App. Ct. at 12, quoting Sahin, supra. After considering the amount of the unpaid child support, the respective incomes, assets, and liabilities of the mother and father, and the absence of any claim that the reduced child support affected the children's welfare, the judge reasonably concluded that no "grave miscarriage of justice" had occurred. See id.

3. Award of attorney's fees. The mother also challenges the order requiring her to pay the father's attorney's fees. A probate judge may award attorney's fees and costs in appropriate circumstances. G. L. c. 208, § 38. "An award of attorney's fees . . . will not be disturbed unless there is an abuse of discretion." Hunter v. Rose, 463 Mass. 488, 499 (2012), citing DeMatteo v. DeMatteo, 436 Mass. 18, 38-39 (2002).

The mother contends that the judge abused his discretion because her claims arose from the father's misconduct and were

8

not made in bad faith.  We disagree.  A showing of "bad faith or frivolous claims or defenses" is not required for an award of fees under G. L. c. 208, § 38.  Wasson v. Wasson, 81 Mass. App. Ct. 574, 582 (2012).  The judge concluded that an award was warranted here because the mother's evidence at trial "fell woefully short of the required mark," even though she had been reminded "throughout the proceedings" of the heightened standard that applied to her request for relief from the judgment.  The judge also acted reasonably in considering the wealth disparity between the parties, noting that the father "credibly testified he had to forgo necessary repairs to his home to finance his defense."  See Cox v. Cox, 56 Mass. App. Ct. 864, 881 (2002) (statute is "designed to level the playing field and allow both sides access to capable legal representation").  Finally, the judge did not abuse his discretion in determining the amount of fees to be awarded, particularly since, "having conducted the trial," he had "ample opportunity to observe" counsel's performance and assess the reasonableness of the requested fees.

See <u>Murphy</u> v. <u>Murphy</u>, 82 Mass. App. Ct. 186, 195 (2012).[1]

<u>Judgment dated October 7,</u>
<u>2024, affirmed.</u>

<u>Judgment dated February 5,</u>
<u>2025, affirmed.</u>

By the Court (Meade,
Ditkoff & Toone, JJ.[2]),

Clerk

Entered:  December 2, 2025.

---

[1] In the Probate and Family Court, the father was also awarded a partial amount of fees for this appeal.  Although the mother filed a notice of appeal from the order awarding the partial fees, the argument in the mother's brief is limited to those fees awarded the father in defending against the action in equity.  We limit our decision to the claim raised.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("The appellate court need not pass upon questions or issues not argued in the brief . . .").  We deny the father's request for further appellate attorney's fees and costs.  Although the mother's arguments on appeal are unpersuasive, they are not frivolous.  See <u>Marabello</u> v. <u>Boston Bark Corp</u>., 463 Mass. 394, 400 (2012).

[2] The panelists are listed in order of seniority.